UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

BRADLEY ROBERT COLEMAN,           )
                                  )
              Plaintiff,           )
                                  )
        v.                         )        No. 1:23-cv-01391-SEB-TAB
                                  )
A. ALICEA Internal Intelligence Investigator, et   )
al.,                               )
                                  )
              Defendants.          )

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

Plaintiff Bradley Robert Coleman is a former Indiana Department of Correction ("IDOC")

prisoner who filed this action alleging First and Eighth Amendment constitutional violations of his

rights related to treatment by IDOC staff while he was housed at Pendleton Correctional Facility

("Pendleton"). Dkt. 10. Upon screening of the amended complaint, the Court allowed Mr. Coleman

to proceed with 1) First Amendment retaliation claims against Defendants Alicea and Williams;

2) Eighth Amendment excessive force claims against Defendants Alicea and Fawver; 3) Eighth

Amendment failure to protect claims against Defendants Alicea, Fawver, Williams, and Wilson;

4) Eighth Amendment condition of confinement claims against Defendants Alicea and Fawver;

and 5) Eighth Amendment deliberate indifference claims against Defendants Alicea, Fawver,

Williams, and Wilson. Dkt. 15. Defendants have moved for summary judgment. Dkt. [64]. For the

reasons that follow, Defendants' motion, dkt. [64], is **GRANTED in part and DENIED in part.**

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because

there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment

1

as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
### Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Coleman and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A.  The Parties

At all relevant times, Mr. Coleman was an inmate incarcerated at Pendleton. Dkt. 65-1 at 10-11.

Defendant Alex Alicea was an Intelligence Analyst working at Pendleton during the time in question. Dkt. 31.

Defendant Zachary Fawver was a correctional officer at Pendleton. Dkt. 65-3.

Defendants Jacob Williams was a Correctional Sergeant at Pendleton. *Id.*

Defendant Christopher Wilson was a Correctional Sergeant at Pendleton. Dkt. 67 at 2.

**B. The Incident**

On October 9, 2021, Mr. Coleman exited the shower and was approached by a caseworker who stated that if he had any contraband, he should give it to IDOC staff before it was "too late." Dkt. 65-1 at 31. Mr. Coleman denied possessing contraband, and he was cuffed and taken to a second holding area where he was scanned with a metal detector by Officer Fawver. *Id.* at 32. He was then transported to a shakedown booth where he was strip searched by Sgts. Williams and Wilson. *Id.*

Mr. Coleman felt the strip search was normal until Sgt. Williams began questioning him about an alleged cell phone in his possession. *Id.* at 33. Mr. Coleman denied possessing a cell phone and was strip searched again. Sgt. Williams then told Mr. Coleman "I know you've got a cell phone in your ass, dude…we're going to get it no matter what, you might as well give it up." *Id.*

Mr. Coleman then requested to speak to a Prison Rape Elimination Act ("PREA") investigator. *Id.* Mr. Coleman believes Sgt. Williams told him they were going to "get in [his] ass and get the cell phone" at least three or four times and was more frustrated with each utterance. *Id.* at 34. He asked Sgt. Wilson why Sgt. Williams was becoming more and more frustrated, and Sgt. Wilson told Mr. Coleman to calm down and that he would be returned to his cell soon. *Id.* at 35. Mr. Coleman testified that Sgt. Williams told him that he would get a write-up for filing a false

PREA complaint. *Id. at 37*. Mr. Coleman did not receive any write-ups for his PREA request. *Id.* at 53-54.

Mr. Coleman then met with a non-party PREA investigator about Sgt. Williams's comments and his PREA complaint. *Id.* The investigator then requested Officer Fawver and Investigator Alicea. *Id.* at 38. These officers then performed another normal strip search on Mr. Coleman and walked away. *Id.* Before the non-party PREA investigator departed, Mr. Coleman told him he was concerned that Officer Fawver and Investigator Alicea would assault him or drop him down the stairs. *Id.* The non-party investigator assured him he would be fine and left. *Id.* Mr. Coleman has no evidence that the non-party investigator communicated these concerns to Officer Fawver or Investigator Alicea, and no one else was present when he voiced these concerns to him. *Id.* at 38, 54.

Sgt. Williams, Investigator Alicea, and Officer Fawver then approached Mr. Coleman with trip gear. Dkt. 65-1 at 21, 39. Mr. Coleman testified that Sgt. Williams gave the command for him to cuff up. *Id.* Mr. Coleman argued with the officers and told them he should be allowed to go back to his cell, and then he was sprayed with OC spray without warning. *Id.* at 20. Mr. Coleman estimated that the time between officers gave the command and when he was sprayed was probably "within ten seconds." *Id.* at 22-23. After he was sprayed, he complied with commands and turned around to allow himself to be cuffed. *Id.*

Video of the incident shows that Defendants walked up to Mr. Coleman's cell and talked to him for two minutes before the spray was deployed. Dkt. 66 at 2:23:25-2:25:55. The spray was less than two seconds in length. *Id.* Sgt. Williams wrote in his report of the incident that Mr. Coleman was given several warnings to comply before the use of force. Dkt. 65-5.

4

Afterwards, Mr. Coleman was removed from the shakedown booth to be taken to medical. Dkt. 65-1 at 57-58. He identified Investigator Alicea on his right side and Officer Fawver on his left side from the sound of their voices because the spray had obscured his vision. *Id.* Mr. Coleman testified that Officer Alicea then repeatedly continued to pinch him and told him he was going to "eat the concrete." Dkt. 65-1 at 58. After a few pinches, Mr. Coleman turned his head and flinched numerous times, which caused the officers to slam him onto the ground. *Id.* In their report, officers stated that Mr. Coleman had attempted to headbutt the officers before the takedown. Dkt. 65-4.

Mr. Coleman then was taken to medical where a nurse asked him if he wanted a decontamination shower, and he replied affirmatively. *Id.* at 59. She directed Officer Fawver and Investigator Alicea to take him to get a decontamination shower, but instead, Investigator Alicea told him "you just hada shower, you're not getting another one" and took him back to his cellhouse. *Id.* at 60. He did not shower until three days later and had to stay in the same clothes the entire time. *Id.* at 61, 80. Mr. Coleman testified that he suffered from burns from the chemical agent on his skin. *Id.* at 80. The officer report of the incident states that Mr. Coleman refused a decontamination shower. Dkt. 65-3.

### III.
### Discussion

**A. Excessive Force Claims Against Investigator Alicea and Officer Fawver**

Mr. Coleman identifies two incidents of excessive force: first, when he was sprayed with OC spray by Investigator Alicea while in the shakedown booth and later when he was pinched and slammed to the ground by both Investigator Alicea and Officer Fawver. Dkt. 65-1 at 18-19. The Eighth Amendment protects inmates from cruel and unusual punishment, including excessive force by prison officials. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). This rule does not bar *de minimis* force unless the force is "of a sort repugnant to the conscience of

mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 37−38 (2010) (per curiam) (cleaned up). Even if the force applied is not *de minimis*, it remains permissible if used "in a good-faith effort to maintain or restore discipline." *McCottrell*, 933 F.3d at 664 (cleaned up). But malicious or sadistic force—even if it does not cause a serious injury—is prohibited. *Id.* To distinguish between good-faith and malicious force, courts consider several factors, including:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Id.* at 663; *see also Whitley v. Albers*, 475 U.S. 312, 321 (1986). These factors are sometimes referred to as the "*Whitley* factors." Additionally, to survive summary judgment, a plaintiff must present evidence supporting "a reliable inference of wantonness in the infliction of pain." *Whitley*, 475 U.S. at 322.

It is not cruel and unusual punishment to use "mace, tear gas or other chemical agent of the like nature when reasonably necessary to prevent riots or escape or to subdue recalcitrant prisoners." *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984). A prison officer may use small amounts of pepper spray to compel a disobedient prisoner to leave a cell. *Id.*; *see also Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 668 (7th Cir. 2012) (where prisoner had hit his cellmate and refused to comply with order to leave cell, use of pepper spray was justifiable). But "it is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." *Soto*, 744 F.2d at 1270.

This case relates largely to Mr. Coleman's allegations that Defendants used excessive force against him on October 9, 2021. The summary judgment record contains video of the incident.

"[W]here a reliable videotape clearly captures an event in dispute and blatantly contradicts one party's version of the event so that no reasonable jury could credit that party's story, a Court should not adopt that party's version of the facts for the purpose of ruling on a motion for summary judgment." *McCottrell v. White*, 933 F.3d 651, 661 n.9 (7th Cir. 2019) (citing *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)).

The video of the incident in this case directly contradicts Mr. Coleman's retelling of events. Although he testified that he was given an order to cuff up about ten seconds before he was sprayed, the video clearly shows that minutes passed between the officers' initial negotiation with Mr. Coleman to comply with orders and the eventual OC spray incident. Dkt. 66 at 2:23:25-2:25:55. And when Mr. Coleman was sprayed, he was sprayed with one short burst with an extremely limited duration. *Id.* No reasonable juror could find that this force was excessive.

Regarding Mr. Coleman allegedly being pinched and thrown to the ground, he argues that he was merely turning his head before the force was used, and the officers' use of force was excessive. Dkt. 73 at 10-11. In support of this contention, he cites missing pages of a conduct report that he alleges prove that Officer Fawver also believed he only turned his head. *Id.* However, he has failed to present this evidence as an attachment to his response, and his unsworn assertions in his response are just assertions—not evidence that can be used to avoid summary judgment. Fed. R. Civ. P. 56(c)(1). *See also MMG Fin. Corp. v. Midwest Amusements Parks, LLC*, 630 F.3d 651, 656 (7th Cir. 2011). Even if Mr. Coleman receives "the benefit of conflicting evidence and reasonable inferences," he must "produce evidence sufficient to establish [the] element[s] essential to" his claim. *Stockton v. Milwaukee County*, 44 F.4th 605, 614 (7th Cir. 2022). Accordingly, summary judgment must be **granted** for Defendants as to Mr. Coleman's excessive force claims.

**B. Failure to Protect Claims Against Alicea, Fawver, Williams, and Wilson**

Mr. Coleman brings claims against these defendants for failing to protect him from harm from guards after he discussed with the non-party PREA investigator that he felt unsafe. Dkt. 65-1 at 24-25. Prison officials have a duty to protect inmates from violent assaults by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). They incur liability for the breach of that duty when they were "aware of a substantial risk of serious injury to [an inmate] but nevertheless failed to take appropriate steps to protect him from a known danger." *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007) (quoting *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002)); *see also Santiago v. Walls*, 599 F.3d 749, 758–59 (7th Cir. 2010). To succeed on a claim for failure to protect, Mr. Coleman must show that (1) Defendants were aware of a substantial risk of serious injury to him, and (2) they acted with deliberate indifference to that risk. *See Farmer*, 511 U.S. at 834, 837; *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). An official will only be liable when he disregards that risk by failing to take reasonable measures to abate it. *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006).

Mr. Coleman argues in his response that Defendants' actions rose to the level of deliberate indifference which shows that they failed to protect him from each other. Dkt. 73 at 2. "[O]fficers who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's right through the use of excessive force but fail to do so" may be held liable. *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)). However, putting aside the fact that it is unclear Mr. Coleman ever communicated fears about his safety to anyone other than a non-party, because the Court has found that the uses of force in both instances were not excessive, Mr. Coleman's failure to protect claims must fail. Summary judgment must be **granted** for Defendants as to these claims.

8

**C. First Amendment Retaliation Claims Against Investigator Alicea and Sgt. Williams**

Mr. Coleman testified in his deposition that he believes Sgt. Williams and Investigator Alicea retaliated against him by physically hurting him specifically because "[he] didn't have no cell phone." Dkt. 65-1 at 14-15. To succeed on a First Amendment retaliation claim, a plaintiff must come forward with evidence sufficient to allow a reasonable jury to conclude that: (1) the plaintiff engaged in protected First Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in the defendants' decision to take the allegedly retaliatory action. *Taylor v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). If he does so, the burden shifts to the defendants to show that the deprivation would have occurred even if he had not engaged in protected activity. *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). If they can make that showing, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual or dishonest. *Id.*

In his own testimony, Mr. Coleman admits that his retaliation claim is not based in protected First Amendment activity. Possessing or not possessing a cell phone is not protected by the First Amendment. However, in his response, Mr. Coleman instead contests that his PREA complaint is in fact the First Amendment activity that spurred his later alleged assaults. Dkt. 73 at 2. Although a PREA complaint is protected First Amendment activity, Defendants have shown that the depravation would have occurred even if Mr. Coleman had not asked for a PREA investigator. After all, Mr. Coleman was not written up for calling for a PREA Investigator, and Defendants would have still strip-searched Mr. Coleman whether or not he had called a PREA investigator. Dkt. 65-1 at 48, 52-53. And Mr. Coleman has failed to present any evidence that this reasoning was either pretextual or dishonest, or even that the non-party investigator told any

information to Fawver and Alicea to trigger the alleged assault. For these reasons, summary judgment must be **granted** as to his First Amendment retaliation claims.[1]

### D. Eighth Amendment Deliberate Indifference Claims Against Alicea, Fawver, Williams, and Wilson

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

For purposes of summary judgment, the material facts following Mr. Coleman's release from the shakedown booth are as follow. Mr. Coleman specifically requested a decontamination shower from the nurse, and she directed the officers to transport him to the showers. Then, Investigator Alicea and Officer Fawver denied him a decontamination shower despite his express request for one. They deliberately defied the directions of medical staff and escorted him back to his cell. Once there, Mr. Coleman had to remain in his clothes covered in the chemical agent without a shower for three days. It is uncontested that Mr. Coleman has failed to describe how

---

[1] The Court need not address whether the defendants are entitled to qualified immunity for the claims the Court has granted summary judgment, as there is a lack of evidence that they violated any of Mr. Coleman's constitutional rights related to these issues.

either Sgts. Williams or Wilson were deliberately indifferent. Dkt. 67 at 31. They are entitled to summary judgment on this claim.

The defendants argue that they should be entitled to qualified immunity on these claims against Investigator Alicea and Officer Fawver related to their refusal to provide a decontamination shower, as it is not clearly established that refusing said shower is a constitutional violation. Dkt. 67 at 39.  But he Seventh Circuit has held that "detaining an inmate for eight hours after using chemical agents without allowing him to wash his face amounts to the wanton infliction of pain and suffering." *Kervin v. Barnes*, 144 F. App'x 551, 552 (7th Cir. 2005). Mr. Coleman was denied a shower for three days—much longer than eight hours. Although, as the defendants contend, Mr. Coleman never states he was not able to use the sink, his clothes were still covered with the chemical agent so he would have continued to be exposed to it even after washing his body. Dkt. 67 at 28. For these reasons, summary judgment must be **denied** as to Mr. Coleman's claims against Investigator Alicea and Officer Fawver.

### E. Eighth Amendment Conditions of Confinement Claims Against Investigator Alicea and Officer Fawver

Under the Eighth Amendment, "prisoners cannot be confined in inhumane conditions." *Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A conditions-of-confinement claim includes both an objective and subjective component. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019). Under the objective component, a prisoner must show that the conditions were objectively serious and created "an excessive risk to his health and safety." *Id.* (cleaned up). Under the subjective component, a prisoner must establish that the defendants had a culpable state of mind — that they "were subjectively aware of these conditions and refused to take steps to correct them, showing deliberate indifference." *Thomas*, 2 F.4th at 720. Proving the subjective component is a "high hurdle" that

11

"requires something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotations omitted). Neither "negligence [n]or even gross negligence is enough[.]" *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008).

Mr. Coleman claims that he was subjected to Eighth Amendment violations when he was denied a decontamination shower and was unable to wash off the chemical agent for three days.. As discussed above, a reasonable juror could find that defendants Investigator Alicea and Officer Fawver were aware that they subjected Mr. Coleman to a prolonged period exposed to a chemical agent and were deliberately indifferent, and these claims cannot be foreclosed under qualified immunity grounds. Accordingly, summary judgment must be **denied** as to these claims against defendants Investigator Alicea and Officer Fawver.

## IV.
## Conclusion

Defendants' motion for summary judgment is **GRANTED in part and DENIED in part**. Dkt. [64]. The only claims now proceeding are Eighth Amendment deliberate indifference and conditions of confinement claims Investigator Alicea and Officer Fawver. The First Amendment claims, Eighth Amendment excessive force claims, and Eighth Amendment failure to protect claims against all Defendants are **dismissed with prejudice**, as are the Eighth Amendment deliberate indifference claims against Sgt. Williams and Sgt. Wilson.

The **clerk is directed** to terminate defendants Sgt. Williams and Sgt. Wilson on the docket.

The Court prefers that Mr. Coleman be represented by counsel for the remainder of this action. The **clerk is directed** to send Mr. Coleman a motion for assistance recruiting counsel with his copy of this Order. Mr. Coleman has **through 21 days after the docketing of this order**, to file a motion for counsel using this form or to inform the Court that he wishes to proceed pro se.

Once the motion has been ruled on and counsel has been recruited, the magistrate judge is asked

to schedule a telephonic status conference to discuss further proceedings.

   **IT IS SO ORDERED.**


Date:   9/8/2025

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

BRADLEY ROBERT COLEMAN
Kosciusko County Jail
221 W. Main Street
Warsaw, IN 46580

All Electronically Registered Counsel

Magistrate Judge Baker's Chambers

13